IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |  |
|---|---|---|
| In re Radio Television Digital News Association, et al., | ) | |
| Petitioners. | ) | No. 26-1099 |
| | ) | |

**OPPOSITION OF FEDERAL COMMUNICATIONS COMMISSION
TO PETITION FOR WRIT OF MANDAMUS**

Pursuant to this Court's order dated May 20, 2026, the Federal

Communications Commission submits this opposition to the petition for writ of

mandamus filed by the Radio Television Digital News Association and several

former FCC officials.

In a "Petition for Special Relief" filed with the FCC on November 13, 2025,

petitioners asked the Commission to repeal its longstanding news distortion policy,

even though that policy has been in place for more than 75 years.  Less than six

months later, on April 28, 2026, petitioners filed a petition with this Court for a

writ of mandamus directing the Commission to act on their Petition for Special

Relief within 90 days of the writ's issuance.

Petitioners maintain that a writ of mandamus is needed to ensure that the

agency acts on the Petition for Special Relief.  But in a letter issued on June 22,

2026, the FCC's Media Bureau dismissed that Petition without prejudice.  *Conor S.*

*Gaffney*, DA 26-615 (Med. Bur. June 22, 2026) (Bureau Letter).  A copy of the

Bureau Letter is attached.  Now that the Bureau has acted, petitioners have no basis for seeking mandamus relief.

Insofar as petitioners contend that the Commission—not its staff—must address the Petition, petitioners can appeal the Bureau's dismissal of the Petition to the full Commission by filing an application for review.  *See* 47 C.F.R. § 1.115.  And if the Commission denies their application for review, petitioners can petition this Court to review the FCC order denying their application.  *See* 47 U.S.C. § 402(a); 28 U.S.C. § 2342(1).  Given the availability of this "adequate alternative remedy," "mandamus is unavailable" to petitioners.  *In re Flynn*, 973 F.3d 74, 79 (D.C. Cir. 2020) (per curiam) (en banc) (cleaned up).  Accordingly, the petition for writ of mandamus should be denied.

## BACKGROUND

### A.  The Public Interest Mandate And The FCC's News Distortion Policy

"As a general matter, there are more would-be broadcasters than frequencies available in the electromagnetic spectrum."  *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 637 (1994).  Because "broadcast frequencies are limited …, they have been necessarily considered a public trust.  Every licensee who is fortunate in obtaining a [broadcast] license is mandated to operate in the public interest …."  *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 383 (1969) (quoting S. Rep. No. 562, 86th Cong., 1st Sess. 8-9 (1959)).

The FCC has a broad "mandate" under the Communications Act "to assure that broadcasters operate in the public interest."  Public Notice, FCC Reminds Broadcasters of Their Public Interest Obligations, DA 26-530, at 3 n.16 (Med. Bur. May 28, 2026) (quoting *Red Lion*, 395 U.S. at 380); *see, e.g.,* 47 U.S.C. §§ 307(a), 309(a).  In "an attempt to particularize the statutory duty of broadcasters to operate in the public interest," the Commission long ago adopted a policy addressing news "distortion."  *Galloway v. FCC*, 778 F.2d 16, 23 (D.C. Cir. 1985) (cleaned up).  It first articulated this policy in 1949, declaring that a broadcast "licensee would be abusing his position as public trustee of these important means of mass communication were he … to slant or distort the presentation" of news, "the basic factual information upon which any truly fair and free discussion of public issues must necessarily depend."  *Editorializing by Broadcast Licensees*, 13 F.C.C. 1246, 1254-55 ¶ 17 (1949).

The Commission initially applied its "policy on rigging, staging, or distorting the news … in a series of cases beginning in 1969."  *Galloway*, 778 F.2d at 19.  In the first of those cases, the agency explained why the policy was necessary:  "Rigging or slanting the news is a most heinous act against the public interest—indeed, there is no act more harmful to the public's ability to handle its affairs."  *Complaints Covering CBS Program "Hunger in America,"* 20 F.C.C. 2d 143, 151 ¶ 22 (1969).  The Commission vowed to "act to protect the public

interest" by taking action against news distortion "[i]n all cases where we may appropriately do so." *Ibid*.

The news distortion policy makes "a crucial distinction between deliberate distortion and mere inaccuracy or difference of opinion." *Galloway*, 778 F.2d at 20. The policy applies only to cases involving "the deliberate portrayal of a significant event which did not in fact occur but rather is acted out at the behest of news personnel." *Ibid*. (quoting *Hon. Harley O. Staggers*, 25 Rad. Reg. 2d (P&F) 413, 414 (1972)). To violate the policy, a distortion in a news report must "be deliberately intended to slant or mislead" and "must involve a significant event," not just "a minor or incidental aspect of the news report." *Ibid*. An "allegation of deliberate distortion must be supported by extrinsic evidence, that is, evidence other than the broadcast itself, such as written or oral instructions from station management, outtakes, or evidence of bribery." *Ibid*. And such an allegation is "material only if the licensee itself is said to have participated in, directed, or at least acquiesced in a pattern of news distortion." *Serafyn v. FCC*, 149 F.3d 1213, 1216 (D.C. Cir. 1998).

**B. The Petition for Special Relief.**

In a "Petition for Special Relief" filed on November 13, 2025, a group of former FCC officials asked the Commission to "repeal the news distortion policy."

Add. 18.  The Radio Television Digital News Association joined this Petition on April 20, 2026.  Add. 20-22.

Petitioners offered several arguments in support of the news distortion policy's repeal.  Among other things, they asserted that even though the agency had found just one violation in the past four decades, the policy "remains inherently dangerous" because "it necessarily embroils the government in trying to police media bias."  Add. 9.  Petitioners also argued that the policy is "vulnerable to partisan weaponization," citing "recent investigations and public statements" by FCC Chairman Brendan Carr.  *Ibid*.

Less than six months after filing their Petition for Special Relief, petitioners filed a petition with this Court for a writ of mandamus directing the FCC to rule on their Petition within 90 days of the writ's issuance.

On June 22, 2026, the FCC's Media Bureau issued a letter dismissing the Petition for Special Relief without prejudice.  The Bureau explained that petitioners had "failed to present their request" for repeal of the news distortion policy "in a manner that is cognizable under our rules."  Bureau Letter at 2.  While the FCC's rules provide for petitions for "special relief" of certain cable television requirements, *see* 47 C.F.R. § 76.7, the Bureau concluded that petitioners' request for "special relief" did not fall within those rules.  Bureau Letter at 1-2.  The

Bureau noted that petitioners did "not identify or invoke any rule" that "governs or even authorizes the pleading they have filed." Bureau Letter at 1.

**ARGUMENT**

Mandamus is a "drastic" remedy that should be granted "only in extraordinary circumstances." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). It is "an option of last resort, available only if a party lacks adequate alternative remedies." *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 582 (D.C. Cir. 2020). Parties seeking mandamus "must satisfy the burden of showing that [their] right to issuance of the writ is clear and indisputable." *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 381 (2004); *see also Illinois v. Ferriero*, 60 F.4th 704, 713 (D.C. Cir. 2023). Petitioners fail to carry that heavy burden.

Petitioners base their request for mandamus on the premise that the agency will not act promptly on their Petition unless ordered to do so. Pet. 25-33. In cases involving allegations of unreasonable agency delay, the Court will grant mandamus only when the agency's delay is "egregious." *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (cleaned up). By any standard, the delay in this case was not "egregious." When petitioners filed their mandamus petition, their Petition for Special Relief had been pending before the FCC for less than six

6

months.  In any event, now that the Bureau has dismissed the Petition, there is no conceivable basis for mandamus relief.

Insofar as petitioners assert that the full Commission must rule on their Petition (*see* Pet. 2, Add. 4 n.1), they have "an adequate alternative remedy to mandamus."  *In re al-Tamir*, 993 F.3d 906, 913 (D.C. Cir. 2021).  If petitioners disagree with the Bureau's dismissal of their Petition, they are free to file an application for review asking the full Commission to review the Bureau's decision.  *See* 47 C.F.R. § 1.115.[1]  If the Commission upholds the Bureau's decision, petitioners can then petition for judicial review of the FCC order denying their application for review.  *See* 47 U.S.C. § 402(a); 28 U.S.C. § 2342(1).

Petitioners suggest that if the news distortion policy is not promptly repealed, the Commission could someday apply the policy unlawfully.  If that were to happen, however, an "adequate alternative remedy" is also available.  *Row 1 Inc. v. Becerra*, 92 F.4th 1138, 1149 (D.C. Cir. 2024).  Any party aggrieved by a future application of the news distortion policy by the FCC can seek judicial review of the FCC's order applying the policy.  47 U.S.C. § 402.  Courts could redress any injuries resulting from "unconstitutional applications" of the policy on a "case-by-case" basis.  *United States v. Hansen*, 599 U.S. 762, 770 (2023).  Given the

---

[1] Should the Court deny mandamus, there is no basis for it to "retain jurisdiction over the case until the Commission rules."  Pet. 33 n.8.

availability of this "adequate alternative remedy," "mandamus is unavailable" for this reason as well. *Flynn*, 973 F.3d at 79 (cleaned up).

**CONCLUSION**

The petition for writ of mandamus should be denied.

Respectfully submitted,

D. Adam Candeub
General Counsel

Jacob M. Lewis
Associate General Counsel

/s/James M. Carr

James M. Carr
Counsel

Federal Communications Commission
Washington, DC  20554
(202) 418-1740

June 22, 2026

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.  This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    ☒  this document contains <u>1,594</u> words, *or*

    ☐  this document uses a monospaced typeface and contains _ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒  this document has been prepared in a proportionally spaced typeface using <u>Microsoft Word in Office 365</u> in <u>14-point Times New Roman</u>, *or*

    ☐  this document has been prepared in a monospaced spaced typeface using _____ with _____.

<u>*/s/ James M. Carr*</u>

James M. Carr
 *Counsel*

Federal Communications Commission
Washington, D.C.  20554
(202) 418-1740

## CERTIFICATE OF FILING AND SERVICE

I, James M. Carr, hereby certify that on June 22, 2026, I filed the foregoing Opposition Of Federal Communications Commission To Petition For Writ Of Mandamus with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the electronic CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ James M. Carr*

James M. Carr
 *Counsel*

Federal Communications Commission
Washington, D.C.  20554
(202) 418-1740