**ORAL ARGUMENT NOT SCHEDULED**

No. 26-1099

---

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

In re Radio Television Digital News Association, Rachelle B. Chong, Ervin S. Duggan, Mark S. Fowler, Alfred C. Sikes, Thomas E. Wheeler, Christopher J. Wright, Kathryn C. Brown, Jerald N. Fritz, *Petitioners*.

---

**PETITIONERS' REPLY IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS**

---

Rachel Goodman
Janine M. Lopez
Tobin Raju
Conor S. Gaffney
**Protect Democracy Project**
2020 Pennsylvania Avenue NW
Suite 163
Washington DC 20006
(202) 579-4582

Andrew Jay Schwartzman
**Andrew Jay Schwartzman, PLLC**
525 9th Street NW, Seventh Floor
Washington, DC, 20004

Gigi Sohn
**G Squared Strategies**
3503 Alton Place, NW
Washington, DC 20008

Berin Szóka
**TechFreedom**
1500 K Street NW, Floor 2
Washington DC, 20005

*Counsel for Petitioners*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

GLOSSARY OF ABBREVIATIONS .................................................................iv

INTRODUCTION........................................................................................................1

ARGUMENT ........................................................................................................4

    1.    The full Commission is the only body authorized to decide the News Distortion Petition, and it has not. .......................................................4

    2.    The Media Bureau's *ultra vires* decision is not only void, but meritless. ..................................................................8

    3.    Petitioners are entitled to mandamus relief. ......................................12

CONCLUSION ...........................................................................................14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

## TABLE OF AUTHORITIES

**CASES**

*Elrod v. Burns*,
   427 U.S. 347 (1976) .................................................................................1

*In re Am. Rivers & Idaho Rivers United*,
   372 F.3d 413 (D.C. Cir. 2004) ...............................................................8

*In re Flynn*,
   973 F.3d 74 (D.C. Cir. 2020) ................................................................13

*In re United States*,
   143 F.4th 411 (D.C. Cir. 2025) .....................................................5, 8, 13

*NAACP v. Button*,
   371 U.S. 415 (1963) .................................................................................1

*United States ex rel. Greathouse v. Dern*,
   289 U.S. 352 (1933) .................................................................................8


**STATUTES**

5 U.S.C. § 555 ..................................................................................................9


**REGULATIONS**

47 C.F.R. § 0.283 .........................................................................................2, 5

47 C.F.R. § 0.5 .............................................................................................2, 5

47 C.F.R. § 1.1 .........................................................................................3, 8, 9


**ADMINISTRATIVE PROCEEDINGS**

*Competitive Pricing Div. Grants Touch Am., Inc.'s Petition for Special Relief*,
   16 F.C.C. Rcd. 3987 (2001) ...................................................................11

*In re Amend. of Section 73.202(b), Table of Allotments, FM Broad. Stations*,
   9 F.C.C. Rcd. 3634 (1994) ...................................................................................10

*In re Application of Faith Ctr., Inc. Station WHCT-TV Hartford, Connecticut for Renewal of License*,
   88 F.C.C.2d 788 (1981) .......................................................................................10

*In re Azteca America*,
   18 F.C.C. Rcd. 10662 (2003) ...............................................................................11

*In re Eastern Microwave, Inc.*,
   58 F.C.C.2d 1307 (1976) .....................................................................................10

*In re Enron Corp.*,
   17 F.C.C. Rcd. 11454 (2002) ...............................................................................11

*In re Falmouth Broadcasting Co.*,
   23 F.C.C. 2d 293 (1970) ......................................................................................10

*In re Further Sharing of the UHF Television Band by Priv. Land Mobile Radio Servs.*,
   2 F.C.C. Rcd. 6441 (1987) ...................................................................................10

*In re Nextel Commnc'ns, Inc.*,
   13 F.C.C. Rcd. 281 (WTB 1998) .........................................................................11

*In re Petition of HC Elecs., Inc. for Special Relief,*
   29 F.C.C.2d 485 (1971) ....................................................................................3, 11

*In re Petition of Jose M. Oti, d/b/a Sandino Telecasters for Termination of Authorization of Angeles Broad. Network, Interim Licensee of Station KAGL (TV), San Bernardino, Cal.*,
   7 F.C.C. Rcd. 6885 (1992) ...................................................................................10

*In re Universal Serv. Contribution Methodology*,
   27 F.C.C. Rcd. 632 (2012) ...................................................................................11

# GLOSSARY OF ABBREVIATIONS

| Abbreviation | Definition |
| --- | --- |
| Add. | Addendum |
| FCC | Federal Communications Commission |
| RTDNA | Radio Television Digital News Association |

## INTRODUCTION

Rather than respond to the merits of Petitioners' request for mandamus relief, Respondent, the Federal Communications Commission ("FCC" or "the Commission"), seeks to maneuver its way out of this proceeding with an irregular, eleventh-hour administrative ploy. The Court need not accept this transparent attempt to evade judicial scrutiny. The Media Bureau's Order purporting to dismiss the News Distortion Petition—issued simultaneously with the FCC's Opposition—is both *ultra vires* and meritless, and this Court should disregard it. Petitioners' case for mandamus relief remains as compelling as ever.

The underlying News Distortion Petition presents issues of constitutional magnitude and increasing urgency for the Commission to decide. Speech is being chilled daily by the Commission's threats to use the news distortion policy to punish broadcasters, including by taking away their broadcast licenses. Such a "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "Because First Amendment freedoms need breathing space to survive," *NAACP v. Button*, 371 U.S. 415, 433 (1963), the FCC must decide the serious constitutional questions presented in the News Distortion Petition without unreasonable delay or bureaucratic obstruction.

Petitioners filed the News Distortion Petition with the full Commission on November 13, 2025. They filed their Petition with the full Commission, rather than with any FCC staff or bureau, because, under the FCC's rules, only the full Commission may decide a matter seeking the repeal of agency policy or precedent. 47 C.F.R. § 0.283(c). Agency staff, like the Media Bureau, are only delegated the limited authority "to act on matters which are minor or routine or settled in nature." *Id.* § 0.5(c).

Contrary to these regulations, the Media Bureau purported to dismiss the News Distortion Petition the very day the Commission's response in this proceeding was due, in a bid to eliminate Petitioners' "basis for seeking mandamus relief." Opp. at 2. And even more boldly, the Media Bureau—which under the Commission's rules lacks the power to take the action it did—purported to dismiss the News Distortion Petition for, it seems, failing to properly style the Petition. The Bureau's action was so unusual and unsupported by lawful authority that a sitting FCC Commissioner took the rare step of issuing a public statement, decrying the move as an "abuse[]" of power designed "to shield significant [Commission] actions from judicial review." Statement of Comm'r Anna Gomez on Media Bureau Summary Dismissal (July 1, 2026), https://docs.fcc.gov/public/attachments/DOC-422758A1.pdf.

2

The Court should see this maneuver for what it is: a gambit to avoid judicial oversight. Not only is the Media Bureau's irregular, last-minute dismissal contrary to FCC regulation, it is meritless. "Petitions for special relief" seeking diverse forms of relief are commonly entertained and decided by the Commission. *See, e.g.*, *In re Petition of HC Elecs., Inc. for Special Relief,* 29 F.C.C.2d 485 (1971) (denying petition for special relief seeking authorization to continue selling low power radio device without Commission approval); *infra* at 10–11 (collecting cases). Moreover, petitions like the News Distortion Petition are expressly contemplated by the FCC's rules, which permit interested parties to petition the Commission to institute proceedings "for the purpose of obtaining information necessary or helpful in the determination of [the Commission's] policies." 47 C.F.R. § 1.1. The Media Bureau's assertion that the News Distortion Petition requests relief that is not "cognizable under our rules" is false. Bureau Ltr. at 2.

The FCC's Opposition to Petitioners' petition for a writ of mandamus is, in a word, remarkable. It declines entirely to engage with Petitioners' arguments for mandamus relief on the merits, instead choosing to rely on an administrative maneuver that is both contrary to FCC regulation and unsupported by agency practice. And the coincidence of the Media Bureau taking this *ultra vires* action the very day the FCC's Opposition was due is simply too striking to be overlooked.

3

The Court should reject this irregular, baseless, and brazenly transparent attempt by the Commission to avoid having to take any action on the News Distortion Petition.

Once the Media Bureau's *ultra vires*, meritless action is put aside, Petitioners straightforwardly prevail. The Commission does not dispute that it has a clear duty to act. Nor does it seriously debate whether its inaction constitutes egregious delay under these circumstances. And the Commission's argument that perhaps one day, *if* the FCC takes a certain enforcement action, Petitioners *may* have an adequate alternative remedy ignores Petitioners' core claim: that the Commission's misapplication of the news distortion policy *today* is violating First Amendment rights—an injury not redressable through the speculative procedure the Commission proposes. There is no merit to the FCC's Opposition, just gamesmanship. The Court should reject it and grant Petitioners' request for mandamus relief.

## ARGUMENT

1. **The full Commission is the only body authorized to decide the News Distortion Petition, and it has not.**

Petitioners' News Distortion Petition asks the Commission to consider the constitutionality and regulatory value of "longstanding agency policy," Opp. at 1, in light of recent developments in First Amendment doctrine, the current

Chairman's misuse of the policy to suppress viewpoints he and the Administration disfavor, and the policy's history (until recently) of desuetude. The FCC's regulations are clear: The Media Bureau lacks the authority to dismiss such a petition. Section 0.5(c) of the Commission's rules delegates Commission authority to staff only "to act on matters which are minor or routine or settled in nature." Section 0.283(c) further clarifies that matters "[t]hat present novel questions of law, fact or policy that cannot be resolved under existing precedents and guidelines" cannot be decided by the Media Bureau and "shall be referred to the Commission en banc for disposition."

Repeal of agency policy is, by definition, not a matter "routine or settled in nature." 47 C.F.R. § 0.5(c). Moreover, the Petition presents novel legal arguments, new facts, recent scholarship, and a novel policy argument in support of its request for repeal. Neither the Petition's request for relief, nor its arguments in support of that request, can be "resolved under existing precedents and guidelines." *Id*. § 0.283(c). The Petition is plainly outside of the Media Bureau's limited authority; this is a matter for the Commission to decide. Tellingly, neither the FCC's Opposition nor the Bureau's Order offers any citation to authority or argument for the Bureau's power to take this action. As such, the Bureau's decision to dismiss the News Distortion Petition is *ultra vires* and this Court should disregard it. *In re*

5

*United States*, 143 F.4th 411, 440 (D.C. Cir. 2025) (Rao, J.) (discussing broad discretion courts enjoy in equity-like mandamus proceedings).

The Bureau's Order is also highly irregular. The FCC received the News Distortion Petition in November 2025. Aside from the Chairman's dismissive social media posts upon receiving the Petition, *see* Mandamus Pet. at 16 ("How about no"); *id*. at 17 ("👎"), the Commission took no action until the day its response in this mandamus proceeding was due to the Court. The Media Bureau then purported to dismiss the Petition, eliminating, according to the FCC, any "conceivable basis for mandamus relief." Opp. at 7. The timing cannot be ignored. For months, rather than take up the News Distortion Petition, the FCC took no action. And now rather than defend its inaction in this proceeding, the FCC seeks to avoid judicial review with bureaucratic legerdemain.[1]

---

[1] The FCC's suggestion that Petitioners file an application for review of the Media Bureau's Order with the full Commission, Opp. at 7, is simply an invitation to more delay. The Petitioners already filed the News Distortion Petition with the full Commission. As explained *supra* at 4–6, the Commission is the only body in the agency that can take action on this Petition. And as explained *infra* at 8–12, the Bureau's reasons for dismissal are plainly meritless. The Media Bureau's Order does not need to be reviewed by the full Commission. Doing so would in no way aid the Commission's decision-making on the News Distortion Petition. It would simply be more process, but with no benefit and for no conceivable purpose. Additionally, the Chairman exclusively controls whether and when any application for review would be presented to the Commission for decision. *See* Mandamus Pet. at 18–20; Mandamus Pet. Add. at 25 (Declaration of Ruth Milkman). The Chairman has already made clear that he has prejudged the News Distortion

6

In their initial Petition for a Writ of Mandamus, Petitioners explained how the Chairman wields exclusive control over FCC staff and bureaus, and how the current Chairman has been exercising this control in irregular, highly partisan, and unconstitutional ways. Mandamus Pet. at 18–20. This latest move by the Media Bureau appears to be yet another instance in a pattern of the Chairman's misuse of FCC authorities.

That is the view of sitting FCC Commissioner Anna Gomez, who released a rare public statement criticizing the Chairman's misuse of the Media Bureau in this instance, and connecting it to a pattern of abuses at the FCC. "The Commission has repeatedly used the Media Bureau to take actions that are inconsistent with longstanding Commission precedent that violate both the Communications Act and the First Amendment," Commissioner Gomez wrote. Gomez Statement, *supra* at 1. As Commissioner Gomez noted, this particular ploy is designed to both prevent the full Commission from taking action on the News Distortion Petition and prevent this Court's review. Gomez Statement, *supra* at 2 ("Not providing the Commissioners with an opportunity to vote on this important petition, however, shields the Commission's actions from critical judicial review.").

---

Petition. Any application for review of the Media Bureau's Order would only encounter more delay and obstruction.

7

But the Court need not accept the Chairman's attempt to evade judicial scrutiny. "Indeed, the primary purpose of the writ [of mandamus] in circumstances like these is to ensure that an agency does not thwart [the Court's] jurisdiction by withholding a reviewable decision." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004). The Media Bureau's Order was *ultra vires*, and this Court has the equitable discretion in this mandamus proceeding to disregard it in determining whether relief is warranted. *See In re United States*, 143 F.4th at 440 ("Although the remedy by mandamus [or prohibition] is at law, its allowance is controlled by equitable principles.") (quoting *United States ex rel. Greathouse v. Dern*, 289 U.S. 352, 359 (1933)).

**2. The Media Bureau's *ultra vires* decision is not only void, but meritless.**

The Media Bureau's dismissal of the News Distortion Petition is beyond its authority. It is also meritless.

The Media Bureau purported to dismiss the Petition solely because it "failed to present [a] request in a manner that is cognizable under our rules." Bureau Ltr. at 2. But the News Distortion Petition and its request for relief are plainly cognizable under FCC rules. Section 1.1 of the FCC rules provides that the "Commission may on its own motion or petition of any interested party hold such proceedings as it may deem necessary . . . for the purpose of obtaining information

8

necessary or helpful in the determination of its policies." Unless another FCC rule provides specifically—like in the case of rulemaking petitions—the procedures governing a petition "shall . . . be such as in the opinion of the Commission will best serve the purposes of such proceedings." *Id*. This flexible, broad, and pragmatic process for petitioning is consistent with Congress's command that federal agencies permit "an interested person" to appear before the agency for the "presentation, adjustment, or determination of an issue, request, or controversy in a proceeding." 5 U.S.C. § 555(b). The News Distortion Petition's request that the Commission review and repeal the news distortion policy easily falls within Section 1.1's accommodating provisions. Contrary to the Media Bureau, the Petition does in fact present a "request in a manner that is cognizable under [the FCC's] rules." Bureau Ltr. at 2.

The Media Bureau also nonsensically suggested that because the News Distortion Petition was styled as a "petition for special relief" it must be construed as a request for relief under Part 76 of the FCC rules, which pertain to cable television operations. *Id*. at 1. But as the Bureau also noted, "that is not the type of relief that Petitioners appear to be seeking." *Id*. at 2. That realization alone should have resolved the Bureau's confusion, as it is a basic principle of administrative law to construe a pleading based on its substance, rather than its form or label.

9

But even if it did not, past agency practice should have guided the Media Bureau here. Petitions for special relief seeking a wide variety of relief unrelated to Part 76 are commonly accepted by the FCC. For at least the last half century, interested parties have presented a variety of pleadings styled "petitions for special relief" and the FCC has accepted them without issue. *See, e.g.*, *In re Falmouth Broadcasting Co.*, 23 F.C.C. 2d 293 (1970) (granting petition for special relief to facilitate application for new broadcast license); *In re Eastern Microwave, Inc.*, 58 F.C.C.2d 1307 (1976) (denying petition for special relief seeking to deny application for microwave authorization); *In re Application of Faith Ctr., Inc. Station WHCT-TV Hartford, Connecticut for Renewal of License*, 88 F.C.C.2d 788 (1981) (granting petition for special relief seeking sale under Commission's minority distress sale policy); *In re Further Sharing of the UHF Television Band by Priv. Land Mobile Radio Servs.*, 2 F.C.C. Rcd. 6441 (1987) (granting petition for special relief seeking postponement of frequency reassignment); *In re Amend. of Section 73.202(b), Table of Allotments, FM Broad. Stations*, 9 F.C.C. Rcd. 3634 (1994) (granting petition for special relief regarding radio channel reallocation); *In re Petition of Jose M. Oti, d/b/a Sandino Telecasters for Termination of Authorization of Angeles Broad. Network, Interim Licensee of Station KAGL (TV), San Bernardino, Cal.*, 7 F.C.C. Rcd. 6885 (1992) (denying petition for special

relief seeking stay of Commission order granting construction permit); *Competitive Pricing Div. Grants Touch Am., Inc.'s Petition for Special Relief*, 16 F.C.C. Rcd. 3987 (2001) (granting petition for special relief seeking waiver of public disclosure obligations under 47 C.F.R. § 42.10); *In re Enron Corp.*, 17 F.C.C. Rcd. 11454 (2002) (denying petition for special relief seeking to set aside consent decree); *In re Azteca America*, 18 F.C.C. Rcd. 10662 (2003) (granting petition for special relief seeking waiver of broadcast network representation rule).

Sometimes the Commission accepts these pleadings without comment. *See In re HC Elecs.*, 29 F.C.C.2d 485. Other times, consistent with sound administrative practice, it notes that it is construing the petition based on the substance of the pleading, not its title. *See In re Nextel Commnc'ns, Inc.*, 13 F.C.C. Rcd. 281, 283 (1998) ("Although styled as a Petition for Special Relief, the Petition is in substance a petition for reconsideration of license grants. . . "); *In re Universal Serv. Contribution Methodology*, 27 F.C.C. Rcd. 632, 633 n.3 (2012).

The Bureau applied the opposite of its well-settled, commonsensical practice here. But federal law long ago abandoned archaic forms of code pleading and hyper-technical invocations of "magic words." The Bureau's suggestion that petitions styled as requests for "special relief" must be construed as seeking relief under Part 76 of the FCC's rules flies in the face of decades of FCC practice, to say

nothing of basic notions of sound administrative practice. This Court should not countenance it.

### 3. Petitioners are entitled to mandamus relief.

The FCC's Opposition turns entirely on the Court accepting the Media Bureau's *ultra vires* and meritless dismissal of the News Distortion Petition. *See, e.g.*, Opp. at 2 ("Now that the Bureau has acted, petitioners have no basis for seeking mandamus relief."). The agency offers no substantive defense of its inaction or argument that mandamus relief is otherwise unwarranted.

The FCC does not dispute in its Opposition that it has a clear duty to act on the Petition under Section 0.3(a)(4) of its rules, Section 4 of the Communications Act, and the Administrative Procedure Act. *See* Mandamus Pet. at 21–24.

Nor does it seriously engage with Petitioners' arguments that its inaction under the unique circumstances of this case constitutes egregious delay. The Commission simply asserts in a single sentence that a six-month delay "[b]y any standard" is not egregious. Opp. at 6. But as Petitioners explained, given the importance of the First Amendment interests at stake, the ongoing harm caused by the Chairman's abuse of the news distortion policy, and the increasingly urgent need for Commission action as the midterm elections approach, a six-month delay under these circumstances is egregious. Mandamus Pet. at 26–33.

The FCC's speculation that Petitioners may one day have an adequate alternative to mandamus relief is unconvincing. The agency argues that if the Commission "someday appl[ies] the policy unlawfully," Petitioners could seek judicial review of the order applying the policy. Opp. at 7. This argument is speculative and the availability of this hypothetical alternative relief is clouded by "substantial uncertainty." *In re United States*, 143 F.4th at 440. It also ignores that Petitioners' have asserted that the policy is being applied unlawfully *today*, causing ongoing constitutional injuries. Mandamus Pet. at 34. "The ordinary availability of [later judicial review] does not relieve this court of its duty to examine the specific factual context of each mandamus petition and the precise irreparable harm alleged." *In re Flynn*, 973 F.3d 74, 95 (D.C. Cir. 2020) (Rao, J, joined by Henderson, J., dissenting). In any event, the question is not whether there may be a remedy for a future application of the news distortion policy. The question is whether there is an adequate alternative remedy to cure the FCC's inaction on Petitioners' News Distortion Petition. As to this, judicial review of a future enforcement action provides no remedy at all.

The reasons Petitioners presented in their initial petition for a writ of mandamus are unrebutted by the FCC's Opposition. This Court should grant mandamus relief.

## CONCLUSION

Since Commissioner Carr was elevated to Chairman in January 2025, the FCC has waged a campaign of regulatory attacks on broadcasters who carry speech he, or the President, disfavors. Petitioners quickly called on the agency to review the propriety of one of its authorities that had shown itself to be particularly susceptible to the Chairman's abuse. After receiving the News Distortion Petition last November, the agency refused to take any steps towards deciding the weighty and urgent issues presented. And now that Petitioners have sought relief in this Court, the FCC does not defend its inaction on the merits, but rather attempts to evade judicial scrutiny with an aberrant and *ultra vires* administrative maneuver. The Court should grant Petitioners' request for mandamus relief.

July 2, 2026                                              Respectfully submitted,

                                                         */s/ Conor S. Gaffney*
                                                         Rachel Goodman
                                                         Janine M. Lopez
                                                         Tobin Raju
                                                         Conor S. Gaffney
                                                         **Protect Democracy Project**
                                                         2020 Pennsylvania Avenue NW
                                                         Suite 163
                                                         Washington DC 20006
                                                         (202) 579-4582

14

Andrew Jay Schwartzman
**Andrew Jay Schwartzman, PLLC**
525 9th Street NW, Seventh Floor
Washington, DC, 20004

Gigi Sohn
**G Squared Strategies**
3503 Alton Place, NW
Washington, DC 20008

Berin Szóka
**TechFreedom**
1500 K Street NW, Floor 2
Washington DC, 20005

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable type-volume limitation because it contains 3,105 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(a)(1). This brief complies with Federal Rule of Appellate Procedure 32(a)(5)'s typeface requirements and Federal Rule of Appellate Procedure 32(a)(6)'s typestyle requirements because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

July 2, 2026

*/s/ Conor S. Gaffney*
Conor S. Gaffney

## CERTIFICATE OF SERVICE

On July 2, 2026, the foregoing was served on all counsel of record via the

Clerk of Court's CM/ECF notification system.


July 2, 2026

*/s/ Conor S. Gaffney*
Conor S. Gaffney
